UNITED STATES DISTRIT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-2298 |
| v. | ) ) | Jury Trial Requested |
| JOHN COYNE d/b/a EXTEME KARAOKE and ABSOLUTE DISC JOCKEYS; MITCH PALMER; ALLEN MANDO; TONY GONZALEZ; TIM THOMAS; RACHEL YACKLEY; ANGIE ONTHENIC; PETER GARCIA; and KENNY SEIDMAN d/b/a DJ KENNY B, | ) ) ) ) ) ) ) | Judge Gary Feinerman Magistrate Judge Sidney Schenkier |
| Defendants. | ) ) | |

## DEFENDANT JOHN COYNE'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant John Coyne d/b/a Extreme Karaoke and Absolute Disc Jockeys, ("Coyne") hereby moves the Court to dismiss Plaintiff Slep-Tone Entertainment Corporation's ("Slep-Tone's") Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Slep-Tone is engaged in a nationwide litigation campaign. It has filed more than fifty (50) cookie cutter lawsuits, including this one, which it filed against nine defendants, apparently to avoid paying multiple filing fees. Slep-Tone manufactures and distributes compact discs ("CDs") containing music to popular songs along with data that displays the song lyrics on a video screen when the tracks are played. According to Slep-Tone, karaoke jockeys (or "KJs") have unlawfully copied the CDs and are using the copied music to perform karaoke shows and,

1

in the course of doing so, are displaying Slep-Tone's SOUND CHOICE trademark without Slep-tone's consent.

However, rather than filing *copyright infringement* actions Slep-Tone is filing *trademark infringement* suits. These lawsuits, including this one, are based solely upon the alleged display of the SOUND CHOICE trademark on video screens during karaoke shows.

Slep-Tone has become the Righthaven of trademarks.[1] Slep-Tone has filed numerous lawsuits, apparently with little or no pre-filing investigation and no warning. In true Righthaven fashion, Slep-Tone has filed its lawsuits *en masse* for the purpose of coercing settlements rather than protecting legitimate intellectual property rights. Slep-Tone is obviously banking on the fact that it would be far less expensive for each defendant to settle the case than to fight Slep-Tone. This is perhaps best evidenced by the fact that none of Slep-Tone's lawsuits have proceeded to trial and few have proceeded past the initial pleading stage.

This case should be dismissed because Slep-Tone has failed to state a claim upon which relief can be granted. Slep-Tone's empty, conclusory allegations and its failure to sufficiently differentiate between the defendants does not even meet the liberal notice pleading standards under *Iqbal* and *Twombly*. The Complaint's conclusory statements fail to establish a plausible case of direct, contributory, or even vicarious trademark infringement or unfair competition. In addition, the Complaint fails to allege facts showing that defendant has used the SOUND CHOICE mark as a trademark. The Complaint is also barred by the doctrine of nominative fair use. The Complaint should be dismissed because there can be no consumer confusion as a matter of law because the consumers who are allegedly confused (viewers and participants in

---

[1] Righthaven LLC is the entity that filed more than 275 copyright infringement actions against defendants who copied all or part of newspaper articles on the websites without permission. Righthaven's business model was to extract settlement payments from each defendant using the threat of liability for statutory damages and attorneys' fees.

karaoke shows) are not the consumers of Slep-Tone's CDs.  Finally, the Complaint is barred

based upon the *Dastar* Doctrine.

### STATEMENT OF ALLEGED FACTS

Plaintiff Slep-Tone is the manufacturer of karaoke accompaniment tracks.  (Comp. ¶ 16.)

Slep-Tone owns federal trademark registrations for the SOUND CHOICE word mark and the

SOUND CHOICE design mark (the "SOUND CHOICE Marks") (*Id.* ¶¶ 50-51.)  The SOUND

CHOICE Marks are registered in International Class 9 for use on "pre-recorded magnetic audio

cassette tapes and compact discs containing musical compositions and compact discs containing

video related to musical compositions."  *See* http://tarr.uspto.gov/servlet/tarrregser=serial&entry

=74561912 (listing use of SOUND CHOICE on "pre-recorded magnetic audio cassette tapes and

compact discs containing compositions and compact discs containing video related to musical

compositions");  http://tarr.uspto.gov/servlet/tarrregser=serial&entry=74627124 (listing use of

SOUND CHOICE on "pre-recorded magnetic audio cassette tapes and compact discs containing

musical compositions and compact discs containing video related to musical compositions.")

Entertainers who provide karaoke services in bars, restaurants, and other venues are

known as karaoke jockeys, karaoke hosts, or karaoke operators ("KJs").  (*Id.* ¶22).  The services

provided by KJs typically include providing the karaoke music and equipment for playback,

entertaining the assembled crowd for warm-up purposes, and organizing the karaoke show by

controlling access to the stage, setting the order of performance, and operating the karaoke

equipment.  (*Id.*)  A KJ will typically maintain a printed catalog of songs available for

performance in order to aid participants in selecting a song to sing.  (*Id.* ¶ 23.)  Slep-Tone alleges

that, "Many KJs, such as some of the present Defendants, obtain, copy, share, distribute and/or

sell media shifted copies of the accompaniment tracks via pre-loaded hard drives, USB drives,

CD-R's, or the Internet." (*Id.* ¶ 26). Some KJs copy the accompaniment tracks from compact discs to computer hard drives or other media an activity known as "media-shifting" (*Id.* ¶ 25). In many cases media-shifting also involves converting the compact disc files to a different format, such as from CD+G format or WAV+G format; this is referred to as "format shifting." (*Id.* ¶ 27).

Slep-Tone alleges in a conclusory fashion that, "Each of the Defendants has used media-shifted and/or format shifted karaoke accompaniment tracks marked with the SLEP-TONE'S registered trademarks for commercial purposes." (*Id.* ¶ 33). Slep-Tone alleges that, "Illegitimate KJs, including these Defendants have an unfair advantage over legitimate KJs, because the illegitimate KJs are able to provide karaoke services with a considerably lower overhead cost and significantly more songs through the pirating of SLEP-TONE's tracks. (*Id.* ¶ 47).

Slep-Tone alleges that, "Each of the Defendants has possessed, used, or authorized the use and display of unauthorized counterfeit goods bearing the Sound Choice Marks, or has provided, advertised, or authorized from the provision of services in connection with the Sound Choice Marks without authorization or tolerance from-or indeed notice to- SLEP-TONE." (*Id.* ¶ 60). Slep-Tone further alleges that, "Each of the Defendants has provided services in connection with the Sound Choice Marks, and has advertised the Defendant's provision of or availability to provide karaoke services in connection with which the Sound Choice Marks have been used." (*Id.* ¶ 61).

## **LEGAL STANDARD**

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re march FIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Tamayo*, 526 F.3d at 1081). Conclusory allegations are "not

entitled to be assumed true." _Ashcroft v. Iqbal_, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868, 885 (2009) (citing _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).   To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. _Tamayo v. Blagojevich_, 526 F.3d 1074, 1081 (7th Cir. 2008); _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, 940 (2007). This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests'" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." _EEOC v. Concentra Health Services, Inc._, 496 F.3d 773, 776 (7th Cir.2007).

Although detailed factual allegations are not required for a complaint to pass muster under Rule 12(b)(6), the factual allegations "must be enough to raise a right to relief above the speculative level…." _Twombly_, 550 U.S. at 555.  The pleading must convince the court that the facts provide more than "a suspicion [of] a legally cognizable right of action." _Id._  Thus, "[w]here a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" _Id._ at 557. Courts considering a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of trust; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." _Iqbal_, 129 S. Ct. at 1940.

## ARGUMENT

I.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR
TRADEMARK INFRINGEMENT AND SHOULD BE DISMISSED.

A.  The Complaint Fails to Plausibly Allege Claims For Direct, Contributory, or
Vicarious Trademark Infringement Under *Iqbal* and *Twombly*.

1.  The Complaint Fails to Plausibly Allege Direct Trademark Infringement.

Slep-Tone's conclusory allegations fail to plausibly allege use of the SOUND CHOICE

mark in commerce, fail to differentiate among each of the nine defendants in this case, and fail to

plausibly allege a likelihood of confusion as a matter of law.

a.  *The Complaint Fails to Plausibly Allege Use In Commerce*

Slep-Tone's Complaint fails to state a claim for direct trademark infringement because it

does not sufficiently allege that any one of the defendants has used the SOUND CHOICE Marks

in commerce.  To prevail in a trademark infringement claim against an accused infringer, the

plaintiff must show: (1) it owns a protectable trademark; and (2) there exists a likelihood of

confusion on the part of the public. *Nike, Inc. v. "Just Did It" Enters.,* 6 F.3d 1225, 1227 (7th Cir.

1993).  In addition, trademark infringement and unfair competition claims "are subject to a

commercial use requirement."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir.

2005).  The inclusion of this requirement in the Lanham Act serves the Act's purpose: 'to secure

the owner of the mark the goodwill of his business and to protect the ability of consumers to

distinguish among competing producers.'" *Id.* at 676 (citing *Two Pesos, Inc. v. Taco Cabana,

Inc.*, 505 U.S. 763, 774, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)).  As Professor McCarthy

notes:

Perhaps the reason that it is argued that a non-trademark use of another's mark is not an
infringement is that a non-trademark use is highly unlikely to cause actionable confusion.
To be an infringement, there must be a likelihood of confusion over source, sponsorship,

> affiliation or approval. This happens when the potential buyer is confronted with two similar designations, both of which are used as marks. That is, the viewer is confronted with two similar designations which in context tell the view that they identify and distinguish a single source. Because defendant is an imitative free rider, each of the contesting designations is used to identify, not a single source, but two different sources. This causes confusion and deception in the viewer's mind. This is trademark infringement.

4J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed. 2008).

Slep-Tone has failed to allege that the defendants used the SOUND CHOICE mark in commerce. Slep-Tone makes general allegations that karaoke is a "commercial enterprise." For example, Slep-Tone makes general allegations that, "Each of the defendant's acts of infringement is of a commercial nature, in that they engaged in the acts with the transfer of money from one party to another as the principal motivation for providing their services." (Comp. ¶ 64). Slep-Tone makes general but conclusory allegations that, "The Defendants' use of the Sound Choice Marks, or of the Trade Dress, or both was "in commerce" within the meaning of the Trademark Act of 1946 as amended. (*Id. ¶* 76).

Slep-Tone's allegations regarding commercial use are conclusory, and therefore cannot be accepted as true. *Iqbal* clarified two working principles underlying the *Twombly* decision. First, although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 557. Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id*. Moreover, as the Supreme Court held in *Iqbal*: "A pleading that offers 'labels and conclusions; or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint

7

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *See Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

More problematically, the Complaint improperly aggregates the actions of each of the nine individual defendants in this case – collectively referring to the actions of all nine as the actions of the "Defendants." This is clearly improper. Lumping these defendants into an undifferentiated collective violates Rule 8(a), Fed. R. Civ. P., which requires "a short and plain statement of the claim" and Rule 8(e), requiring averments to be "simple, concise, and direct." "In a case involving multiple defendants . . . 'the complaint should inform each defendant of the nature of his alleged participation...'" *Viacom v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 778 (7th Cir. 1994) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987). *Myers v. Winn Law Group*, No. 2:11-cv-02372 JAM KJN PS, 2011 WL 4954215, at *2 (E.D. Cal. Oct. 18, 2011) ("All of plaintiff's allegations are targeted at the four named defendants *collectively*, such that it is impossible to tell which defendant took which alleged actions…Because plaintiff does not make any factual allegations as to particular defendants, he cannot proceed unless he cures these deficiencies in an amended complaint."); *Corazon v. Aurora Loan Services, LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("Undifferentiated pleading against multiple defendants is improper."); *In re Sagent Tech., Inc.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003); (The Complaint fails to state a claim because plaintiff do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of Federal Rule of Civil Procedure 8(a)(2)).

The Complaint has failed to allege specific facts showing that any one of the defendants has used the SOUND CHOICE Marks in interstate commerce. As such, it has failed to state a claim upon which relief may be granted and must be dismissed.

        b.   The Complaint Fails to Allege Facts Establishing a Likelihood of Confusion.

Slep-Tone has alleged likelihood of confusion among viewers and participants in karaoke shows, not confusion among its customers –KJs who purchase CDs.

If the Court determines as a matter of law from the pleadings that confusion is unlikely, the complaint should be dismissed. *See Murray v. Cabl Nat'l Broadasting Co.,* 86 F. 3d 858, 860 (9th Cir. 1996) (Citing Toho Co. Ltd. v. Sears Roebuck & Co., 645 F. 2d 788, 790-791 (9th Cir. 1981)). A likelihood of confusion exists when a consumer viewing a mark is likely to purchase the services under a mistaken belief that the services are, or are associated with, the services of another provider. *Murray* 86 F. 3d 861 (citing *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)). The confusion must be probable not simply a possibility." *Id.*

It is well established that the relevant confusion is confusion among the trademark owner's customers in the trademark owner's channels of trade. In the case of *In re The W.W. Henry Company, L.P.* 82 U.S.P.Q.2d 1213 (T.T.A.B. 2007), the United States Trademark Trial and Appeal Board found that there was no likelihood of confusion between the mark PATCH 'N GO for chemical filler marketed and sold to plastic manufacturers for the repair of plastic and the trademark applicant's PATCH & GO mark for drywall and cement patch compound marketed and sold to do-it-yourselfers in hardware stores. *Id.* The Board found that confusion was unlikely because the two products would be sold "to different classes of purchasers through different channels of trade." *Id.* Likewise, the Federal Circuit found no likelihood of confusions

where the plaintiff sold "E.D.S." computer services while the defendant sold "EDS" power supplies and battery chargers. *Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.*, 954 F.2d 713 (Fed. Cir. 1992). Even though there was some overlap in the markets at issue, the Federal Circuit viewed this as a case of sales occurring in separate channels of trade. *Id.* Even though both parties sold products to the medical industry, the plaintiff sold its "E.D.S." data processing services to medical insurers while the defendant sold its "EDS" batteries and power supplies to makers of medical equipment such as bedside alert systems and crib monitors. *Id.*

Here, as in those cases, there can be no likelihood of confusion as a matter of law. The Complaint alleges that viewers and participants in karaoke shows will be confused by the Defendants' use of the SOUND CHOICE Marks. (Comp. ¶ 84 (The display of the Sound Choice Marks, the Trade Dress, or both is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing falsely, that SLEP-TONE sponsored or approved the Defendants' services and commercial activities.")

*The viewers and participants in karaoke shows are not Slep-Tone's customers.* Slep-Tone sells its CDs to KJs. The Complaint alleges that, "Legitimate KJs purchase equipment and purchase or license compacts discs containing accompaniment tracks and charge for the above-mentioned karaoke services." (Comp. ¶ 24). Further, "Legitimate KJs spend thousands of dollars acquiring SLEP-TONE's accompaniment tracks." (*Id.* ¶ 46). "Whereas in the past a KJ would buy multiple copies of an original disc if he or she desired to operate multiple systems, now they simply "clone" their songs for multiple commercial systems or even their entire karaoke song libraries to start a new operation." (*Id.* ¶ Introduction) The Complaint does not allege that Slep-Tone is in the business of providing karaoke services or that the defendants are

10

in the business of selling karaoke accompaniment tracks to KJs. Accordingly, there is no

likelihood of confusion as a matter of law because the persons allegedly confused – viewers and

participants in karaoke shows – are not the same class of persons who purchase Slep-Tone's

karaoke accompaniment tracks for use in connection with the provision of karaoke services.

   B.   The Complaint is Barred by the Doctrine of Nominative Fair Use.

   Slep-Tone's claims are also barred by the doctrine of nominative fair use. Nominative

fair use refers to a defendant's use of the plaintiff's trademark to describe or identify the

plaintiff's product. 3 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition

§ 23:11 (4th ed. 2006 & Supp. 2012). "[A] defendant who raises the nominative fair use issue

need only show that it uses the mark to refer to the plaintiff's trademarked goods or services.

The burden then reverts to the plaintiff to show a likelihood of confusion under the nominative

fair use analysis." *Id. §* 23:11. Here the Defendants allegedly used Slep-Tone's SOUND

CHOICE Marks to, at most identify Slep-Tone's music and lyrics. The Complaint alleges that

the Defendants have provided "services in connection with the Sound Choice Marks, and has

advertised the Defendant's Provision of or availability to provide karaoke services in connection

with which the Sound Choice Marks have been used. (Comp. ¶ 61). Slep-Tone further alleges

that the music tracks played are copies of Slep-Tone's music. So, when the Defendants play

CDs during karaoke shows, the SOUND CHOICE Marks are seen in connection with Slep-

Tone's actual music and lyrics. Thus the SOUND CHOICE Marks are used in connection with

Slep-Tone's music and lyrics, not those of some other party.

   The Court may consider the issue of nominative fair use on a motion to dismiss. *See In*

*re Dual-Deck Video Cassette Recorder Antitrust Litigation.,* 11 F.3d 1460, 1466-67 (9th Cir.

1993); *1 800 Get Thin, LLC v. Hiltzik,* No. CV11-00505 ODW (PJWx), 2011 WL 3206486 (C.D.

11

Cal. July 25, 2011) (dismissing trademark infringement claim against the Los Angeles Times for

using plaintiff's 1800 GET THIN trademark in seven news articles); *Architectural Mailboxes,*

*LLC v. Epoch Design, LLC,* No. 10cv974 DMS (CAB), 2011 WL 1630809 (S.D. Cal. Apr. 28,

2011) (dismissing trademark infringement claim based upon the defendant's use of plaintiff's

OASIS trademark on defendant's website where website identified plaintiff as the manufacturer

of the "Oasis Jr." metal mailbox at issue.

"The Court of Appeals for the Seventh Circuit has not ruled on the applicability of

the nominative fair use defense, nor the standards by which a claim of nominative fair use should

be evaluated. There is also no guiding precedent within this Circuit on the relationship between

a nominative fair use defense and the likelihood of confusion test for infringement. However, the

Seventh Circuit has ruled that a finding of a likelihood of confusion does not preclude

consideration of the classic (descriptive) fair use defense." *Sunmark, Inc. v. Ocean Spray*

*Cranberries, Inc.,* 64 F.3d 1055, 1059 (7th Cir. 1995) (finding that confusion is not inconsistent

with a fair use defense). That reasoning was recently approved by the Supreme Court. *KP*

*Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 160 L. Ed. 2d 440, 125 S.

Ct. 542, 550 (2004) (finding that a party raising the defense of descriptive fair use is not required

to negate the likelihood that its use of the mark will confuse customers about the origin of the

goods or services). Within the Northern District of Illinois, two Judges have recognized the

potential for a nominative fair use defense and applied *New Kids* test. In an unpublished opinion,

Judge Kocoras considered a plaintiff's motion to strike a defendant's affirmative defense

of nominative fair use. *R. J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2001 U.S.

Dist. LEXIS 8896 at *18 (N.D. Ill. June 28, 2001). Applying a truncated version of the defense,

[Judge Kocoras] found the defendant's claim of nominative fair use legally insufficient, because

the defendant failed to show that its use of the mark was unlikely to suggest the plaintiff's sponsorship, endorsement of or affiliation with the defendant's product. *Id.* In 2002, Judge Lindberg issued an opinion endorsing the *New Kids* test; but like Judge Kocoras, he found the defendant's use of the plaintiff's mark more than merely nominative. *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002). Judge Lindberg then proceeded to apply the traditional likelihood of confusion test for trademark infringement, a step of the analysis that is unnecessary. *Id.*

The Ninth Circuit considers three factors to determine whether nominative fair use has occurred. It considers whether: (1) the products was "readily identifiable" without use of the mark; (2) the defendant used more of the mark than necessary; and (3) whether the defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1175-76 (9th Cir. 2010) (citing *Playboy Enterprises, Inc., v. Welles,* 279 F.3d 796, 801 (9th Cir. 2002)). This test " evaluates the likelihood of confusion in nominative use cases." *Id.* It is designed to address the risk that nominative use of the mark will inspire a mistaken belief on the part of consumers that the speak is sponsored or endorsed by the trademark holder. *Id.* If the nominative use satisfies the three-factor test, it does not infringe. *Id.*

Here, each of the nominative fair use factors is satisfied. First, Slep-Tone admits that it is not the sole provider of karaoke accompaniment tracks in the market. (Comp. ¶ 1 Intro ("Sound Choice came to be recognized as one of the leading producers of high-quality karaoke accompaniment tracks.")) (Comp ¶ 56 referring to "tracks of its competitors"). Since Slep-Tone is not the sole provider of karaoke accompaniment tracks, its CDs are not readily identifiable without referring to its SOUND CHOICE Marks.

13

Second, the Defendants have not used more of the mark than necessary. The Complaint alleges only that the Defendants have used the SOUND CHOICE Marks during "On each occasion when they caused a SLEP-TONE accompaniment track to be played during a karaoke show." (*Id.* ¶ 83.).

Third, with respect to whether "the defendant falsely suggested he was sponsored or endorsed by the trademark holder," the defendants used Slep-Tone's mark to, at most identify Slep-Tone's music and lyrics, not to falsely associate themselves with Slep-Tone. This element does not require a defendant to have made an affirmative statement that its product or service is not sponsored by the plaintiff. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 811 (9th Cir. 2003). "A defendant's use is nominative where he or she used plaintiff's [mark] to describe or identify the plaintiff's product, even if the defendant's ultimate goal is to describe or identify his or her own product." *Id.* At 809-810. (Emphasis Added.) "Where use of the trade dress or mark is grounded in the defendant's desire to refer to the plaintiff's product as a point of reference for defendant's own work, a use is nominative." *Id.* at 810.

In this case, Slep-Tone uses its SOUND CHOICE Marks to identify itself as the source of the goods listed in its trademark registrations – namely its CDs which contain karaoke accompaniment tracks. Slep-Tone does not use its SOUND CHOICE Marks to identify itself as a provider of karaoke services. Indeed, its trademarks registrations do not cover karaoke services. In addition, the Complaint alleges nothing more than the display of the SOUND CHOICE Marks during karaoke shows, which are displayed automatically when Slep-Tone's CDs are played. The SOUND CHOICE Marks are being used, if at all, to identify Slep-Tone as the source of its CDs, which contain its karaoke accompaniment tracks. The SOUND CHOICE Marks are not being used to identify the defendants' karaoke services. Accordingly, the Court

should dismiss the Complaint because it is barred by the doctrine of nominative fair use. To the extent Slep-Tone complains about confusion as to whether it is the origin of the copyrighted music and lyrics, its claim is barred by the United States Supreme Court's decision in *Dastar*, as set forth more fully below.

C. The Complaint is Barred by *Dastar* and Should be Dismissed.

The Lanham Act provides for the registration of trademarks, which it defines in § 45 to include "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . ." 15 U.S.C. § 1127. *Wal-Mart Stores v. Samara Brothers,* 529 U.S. 205, 209, 120 S. Ct. 1339; 146 L. Ed. 2d 182; 2000 U.S. LEXIS 2197 (2000). In contrast, copyright law "protects the artist's right in an abstract design or other creative work." *RDF Media Ltd. V. Fox Broad. Co.,* 372 F. Supp. 2d 556, 563 (C.D. Ca. 2005). Thus while trademark law protects the distinctive source identifying function of a particular mark, copyright law protects the expressive content of an author's creative work as a whole. *See Whitehead v. CBS/Viacom, Inc.,* 315 F. Supp. 2d 1, 13 (D.D.C. 2004).

Here, Slep-Tone impermissibly seeks to redress the unlawful copying and distribution of its music and lyrics – claims that are properly brought under the copyrights laws – through a trademark infringement action. Slep-Tone's claims are barred by the United States Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation,* which holds that the Lanham Act does not protect against confusion as to the identity of the author of any idea, concept, or communication (*i.e.* copyrightable expression). *See Dastar Corp v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 37, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003).

15

In *Dastar*, Doubleday had published a book entitled "Crusade in Europe" and granted exclusive television rights to Fox, who created a television series based on the book. *See Dastar,* 539 U.S. at 25-27. Years went by and Fox allowed its television rights to pass into the public domain. *Id.* It later reacquired them, including the right to distribute the series on video. It sublicensed the right to manufacture and distribute videos of the series to SFM Entertainment and New Line Home Video, Inc. (the "Fox Licensees"). *Id.* However when the television rights were in the public domain, Dastar acquired the original video tapes to the television series, revised them and began selling them without any attribution to Fox of the Fox Licensees. *Id.* The Fox Licensees sued Dastar alleging that sales of the new television series constituted "reverse passing off" under the Lanham Act. *Id.* The district court entered a judgment for the Fox Licensees on their Lanham Act claim and the Ninth Circuit affirmed. *Id.* at 28.

The United States Supreme Court reversed the Ninth Circuit in a unanimous decision authored by Justice Scalia. The Supreme Court noted that the Lanham Act protects trademark owners against false designations of *origin* made by competitors. Justice Scalia stated: "If 'origin' refers only to the manufacturer or producer of the physical 'goods' that are made available to the public (in this case videotapes of the new series), Dastar was the origin. If, however 'origin' includes the creator of the underlying work that Dastar copied [*i.e.* the original series], then someone else (perhaps Fox) was the origin of Dastar's product." *Id.* at 31. Justice Scalia reasoned that if "origin" means the creator of the underlying copyrightable work then trademark law would conflict with copyright law, which allows for the free copying and distribution of works whose copyrights have passed into the public domain. Justice Scalia stated: "Assuming for the sake of argument that Dastar's representation of itself as the 'Producer' of its videos amounted to a representation that it originated the creative work

16

conveyed by the videos, allowing a cause of action under [the Lanham Act] for that representation would create a species of mutant copyright law that limits the public's federal right to 'copy and to use' expired copyrights." *Id.* at 34. Thus the Supreme Court held that the word "origin" in § 43(a) of the Lanham Act (*i.e.,* 15 U.S.C. § 1125(a)) "refers to the producer of the tangible goods that are offered for sale and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

Under Dastar, Slep-Tone cannot state a Lanham Act claim based on the notion that viewers and participants of karaoke shows are confused as whether Slep-Tone is the creator of the music and lyrics on the CDs. The Complaint alleges that viewers and participants in karaoke shows will be confused by the Defendants' use of the SOUND CHOICE Marks. (Comp. ¶ 89 The display of false designations of origin is also likely to cause confusion or to cause mistake, or to deceive those present during the display.") Accordingly, to the extent Slep-Tone is complaining about confusion occurring in the marketplace as to whether it is the author of its karaoke accompaniment tracks, as opposed to whether it is a source from which karaoke CDs are available for purchase, Slep-Tone fails to state a claim upon which relief can be granted.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION AND SHOULD BE DISMISSED.

Count II of the Complaint purports to allege a cause of action for unfair competition under the Lanham Act. "When trademark and unfair competition claims are based on the same [allegedly] infringing conduct, courts apply the same analysis to both claims." *Toho Co., Ltd. V. William Morrow and Company, Inc.,* 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998) ( citing *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 128 n.2 (9th Cir. 1992)). Count II is based upon the same allegedly infringing conduct as Count I. Accordingly, because Slep-Tone has

failed to state a claim for trademark infringement, it has also failed to state a claim for unfair competition and the Complaint should be dismissed.

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT.

The Seventh Circuit has not addressed this question. However, recent district court decisions within this circuit which have analyzed whether the federal copyright law preempts a claim under the Illinois UDPTA have held that the inherent misrepresentation that accompanies the unauthorized copying and reproduction of another's copyrighted work in a reverse passing off case without more is not enough to constitute a cause of action under the UDTPA. *See Marobie-Fl, Inc. v. Nat'l Assoc. of Fire Equip. Distributors of Northwest Nexus, Inc., 983 F. Supp.* 1167, 1180 (N.D. Ill. 1997); *Balsamo/Olson Group v. Bradley Place Ltd. Partnership*, 950 F. Supp. 896, 898 (C.D. Ill. 1997); *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1362 (N.D. Ill. 1994). We recognize that the federal copyright law has a specific preemption provision for state causes of action and, therefore, that the courts' opinions in these cases fall under that section. However, the federal cause of action for reverse passing off under Section 1125 (a) is no different in its requisite elements than a state cause of action for unfair competition under the UDPTA. *Pesina v. Midway Mfg Co.*, 948 F. Supp. 40, 42 (N.D. Ill. 1996). Accordingly, because Slep-Tone has essentially alleged all of the same facts as in the second count of the Complaint, it has failed to state a claim for relief under the Illinois Deceptive Trade Practices Act and the Complaint should be dismissed.

## IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADEMARK COUNTERFEITING AND SHOULD BE DISMISSED.

Although Slep-Tone does not expressly denominate a "count" in its Complaint for trademark counterfeiting, its prayer for relief requests that the Court find that "each of the Defendants has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks, of the Trade Dress, or of both."  (Comp. at p. 19)

The Complaint, however, fails to state a claim for trademark counterfeiting. To state a claim for trademark counterfeiting, the plaintiff must allege that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit, as the term counterfeit is defined in 15 U.S.C. § 1116. *See Too, Inc. v. TJX Companies, Inc.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002) (citing *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir. 1994)). A "counterfeit mark" is defined in 15 U.S.C. § 1116 as: "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed . . . ." 15 U.S.C. § 1116(d)(1)(B)(i).

Here, the Complaint fails to state a claim for trademark counterfeiting because the SOUND CHOICE Marks do not meet the statutory definition of a "counterfeit mark." To meet that definition, "[s]ection 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 945-46 (9th Cir. 2011) (emphasis added). The SOUND CHOICE Marks satisfy the first part of the test because they are each a "non-genuine mark" that is "identical to the registered, genuine mark" of Slep-Tone when used by KJs who have illegally copied Slep-Tone's CDs. However, the SOUND CHOICE Marks do not meet the second part of

the test because they do not cover the same goods and services allegedly offered by the defendants. The Complaint identifies Slep-Tone's U.S. trademark registrations for the SOUND CHOICE Marks as United States Trademark Registration Nos. 1,923,448 and 2,000,725. (Comp. ¶¶ 95-96.) Slep-Tone's trademark registrations permit use of the SOUND CHOICE Marks on "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." *See* http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=74561912 (listing use of SOUND CHOICE on "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions"); http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=74627124 (listing use of SOUND CHOICE on "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions.") The defendants are accused of using SOUND CHOICE in connection with karaoke services. ("Each of the Defendants is accused of committing acts of infringement, unfair competition, and deceptive and unfair trade practices in substantially the same way, namely, through the use of counterfeit karaoke tracks to perform karaoke-related services.")). Accordingly, the SOUND CHOICE Marks are not "counterfeit marks" under the circumstances alleged in the Complaint. The Complaint fails to state a claim for trademark counterfeiting because the SOUND CHOICE Marks do not meet the statutory definition of "counterfeit marks" where, as here, the goods and services they cover are different from those allegedly offered by the defendants.

## **CONCLUSION**

For the foregoing reasons, the Defendant, John Coyne, respectfully request that the Court

dismiss the Complaint.

Dated this 9th day of May, 2012.

The Law Offices of Matthew M. Saffar, LLC


By: ___/s/Matthew M. Saffar_____
Matthew M. Saffar (Illinois Bar No. 6295406)
800 E. Northwest Highway, Suite 1095
Palatine, IL 60074
Tel: (847)259-6647
Fax: (847)259-6652
Email: saffarlaw@gmail.com
Attorney for Defendant John Coyne